___/ FILED     ___ LODGED
___ RECEIVED ___ COPY

JAN 0 8 2008

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

1  Leann Collins
2  7517 Meadowview Ln
3  Austin, Texas 78752
4  512-773-5674
5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

| | | |
|---|---|---|
| 9 **Leann Collins** | ) | **CASE NUMBER: 2:07-cv-01934-PHX-EHC** |
| 10     **Plaintiff,** | ) | |
| 11 vs. | ) | |
| 12 | ) | |
| 13 **Jeffrey Minor,** | ) | **FIRST AMENDED COMPLAINT** |
| 14 **Mike Minor, Shawn Freeman,** | ) | |
| 15 | ) | |
| 16     **Defendants** | ) | |
| 17 | ) | |
| 18 _____ | ) | |

19

20  **PREAMBLE**

21      This complaint is being amended to drop the claims against Easynews, Inc. and El

22  Dorado, Inc.   Currently the case against these entities is proceeding in United States District

23  Court, Western District of Texas.   Lynn Minor has been dropped as a defendant.   The

24  complaint has been amended for new facts and new claims.

25

26      NOW COMES Leann Collins complaining of Jeffrey Alan Minor, Mike Minor, and

27  Shawn Freeman and for cause of action would show unto the Court as follows:

28  **I.     JURISDICTION AND VENUE**
29
30  1.1     This claim arises under the provisions of the Copyright Act of the United States, as

31  amended, 17 USC § 1, et seq., and is for infringement of multiple copyrights registered in the

32  Copyright Office of the United States.

1

1.2    This Court's jurisdiction over this matter is proper pursuant to 28 USC §§ 1331, 1332 and 1338(a).

1.3    Venue is proper in this judicial district pursuant to 28 USC §1391 and 1400(a) in that defendants or their agents "may be found" in this district, and the defendant is subject to personal jurisdiction in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district, and the property that is the subject of this action is located in this district.

## II.    PERSONAL JURISDICTION

2.1    This Court has personal jurisdiction over the defendants because: (a) the defendants' contacts with the State of Arizona are continuous and systematic; and (b) the defendants purposefully direct their activities to the residents of the State of Arizona and plaintiff's cause of action arises out of, or is related to the defendant's contacts with the State of Arizona.

2.2    Additionally, the Court has personal jurisdiction over the parties because they conducted business in Arizona and committed torts in Arizona.

2.3    The individual defendants, Jeffrey Alan Minor, Mike Minor and Shawn Freeman have caused a tort to be committed within the State of Arizona through contributory infringement and vicarious infringement, which caused injury to a Texas resident.

## III.    THE PARTIES

3.1    Plaintiff is Leann Collins, an individual residing in Travis County, Texas.

3.2    Jeffrey Alan Minor is an individual residing in Phoenix, Arizona and may be served with process at his home/residence at 3438 East Mariposa, Phoenix, AZ 85018.

3.3    Mike Minor is an individual residing in Phoenix, Arizona and may be served with process at his home at 3730 East Mare Court, Phoenix, Arizona 85044; or his place of employment at 5025 N. Central Avenue Suite 496, Phoenix, Arizona 85012.

3.4    Shawn Freeman is an individual residing in Mesa, Arizona, and may be served with process at his home address at 2523 East Ecanto Street, Mesa Arizona 85213.

3.5    El Dorado Sales, Inc. and EasyNews, Inc. are no longer parties in this case. The amended complaint dismissed them.  El Dorado Sales, Inc. and EasyNews, Inc  are defendants in a lawsuit in United States District Court, Western District of Texas, A 06 CA 451 LY,  for direct copyright infringement and other claims.   Defendants Mike Minor and Jeff Minor were dismissed from that lawsuit for lack of personal jurisdiction.

## IV.    FACTS

4.1    Leann Collins ("Collins") is a professional photographer who specializes in wedding photography, portraits, still-lifes, landscapes and fine-art nudes.

4.2    From 1996 to the present, Collins created over a thousand photographs and registered them with the United States Copyright Office.  A list of the photographs at issue and the dates of registration is attached as Exhibit 1 and incorporated herein by reference.

4.3    The infringements by Defendants occurred on or about October 28, 2004 and 40 days thereafter, see exhibit 1 C.1-22; on or about February 20, 2005 and 40 days after, see exhibit 1 A.1-38; and April 14, 2006 and 40 days after, see exhibit 1B1-3. The exhibits contain the file names of the images infringed.

4.4    All photos are marked with the name "Leann Collins" and the word "copyright" and the year of the copyright.  A sample of several of Collins' photos are attached as Exhibit 2.

4.5    Collins has a college degree from one of the top photography schools in the country. Her degree was with honors.

4.6    Collins' work has shown in galleries, she has also won awards for her photography, referred to as "gold corners"; her work has been featured internationally in magazines.

4.7    Collins' boudoir photography and nudes were featured in a Playboy cable documentary.

4.8    Collins' photo-impressionism is one of her signature styles, and she has developed techniques related to this style that were taught in national schools.  This work is not done on computer and is completely handcrafted, see exhibit 2 - 1.  A single image might take as many as 110 hours to hand craft and get it to the point of a final print.

4.9    Some of Collins' works, cost tens of thousands of dollars to produce a single useable fine art image.

4.10    Some of Collins' work was shot in life threatening circumstances, such as leopard habitat, mere feet away from deadly rhinos and in the face of an elephant charge.

4.11    Collins has modeled professionally before moving into photography.  She has modeled for University of Texas, Austin Community College, and Doughtery Fine Arts Center to name a few, the modeling led her into photography.

4.12    Collins currently has her own website at www.leanncollins.com.  All of the photographs posted on her website are also marked with her name, the word "copyright" and the year of the copyright registration, see exhibit 2 of this complaint.

4.13    Skip.

4.14    All copyright  infringements at issue in this suit are registered with the copyright office.  Plaintiff at no time transferred or assigned any ownership interest in any of the images at issue in this suit prior to the date of registration.  During all times relevant to this suit, Collins has owned all rights in the copyrights at issue, and works.  Collins is the original author of all works at issue in this suit.

4.15    Plaintiff filed her application for copyright, paid the fee, and made the required deposit of her work with the United States Copyright Office in proper form.  No registration has been refused by the copyright office.

4

4.16    Collins' copyrighted all works at issue in this suit.  Plaintiff complied with all formalities, including sending the deposits, paying the full fee, and providing application for registration.  Collins rights in the above described work are presently valid from the moment of their creation, and all conditions precedent to filing of this suit have occurred.

4.17    Collins at all times relevant to this suit is the sole owner of, and at all times relevant to this claim, has been and is now the sole owner and proprietor of all rights, title and interest in and to the copyrights and  the images at issue in this suit. The images at issue in this suit have sufficient creativity to be copyrighted.  Collins is the original author and creator of all the works copyrighted at issue in this suit.

4.18    Collins would have never willingly licensed her images to Defendants.

4.19     Plaintiff's license agreement, available on the internet, clearly states that her license fee is $2,500 per image for internet usage.

4.20     Plaintiff's works were created at considerable cost,  involved considerable time and risk - both personal and financial.

4.21     El Dorado Sales, Inc. ("El Dorado") is a company dedicated to the sale of pirated photographs, movies, music through its "web servers" (located at www.easynews.com) to subscribers who pay both a monthly subscription fee and additional fees for additional gigs of downloaded pictures, movies, and music over the base amount.

4.22     At all times relevant to this lawsuit, El Dorado was the 100% owner of two subsidiary companies:  (1) Puregig, Inc. and (2) Easynews, Inc.  El Dorado used Puregig, Inc. to provide internet access to third party companies (not to consumers).  El Dorado in turn was owned 100% by Jeff Minor, Defendant.

4.23     The Easynews website at issue in this case is a virtual clone of the Netpics website that was found to be infringing in an  important pre-Napster internet case, written by the Honorable

1    Barefoot Sanders, *Playboy Enterprises, Inc. V. Webbworld, Inc.,* 991 F.Supp. 543, *aff'd without*

2    *opinion* 168 F.3d 486 (5th Cir. 1999).

3    4.24    The software at issue in this case has a colorful history which goes back to on or about

4    February 17, 1997.  The police in Fort Worth Texas shut down a virtually identical website, the

5    infamous www.netpics.com.  The principals, Brian Ellis, Bentley Ives and James Gurkin were

6    arrested on felony charges for distribution of child pornography – they later pled out.

7    4.25    The "Newscan" software in the Netpics case works virtually identical to the "Filter

8    Code" in this case.

9    4.26    The programmer and principal in that case, Brian Ellis as part of his defense was

10   allowed into the Fort Worth Police property room where he stole the Newscan software.

11   4.27    To finance his criminal defense Ellis began to sell the Newscan software.

12   4.28    Netpics opened back up in Sacramento California.   The software was also sold to

13   various websites such as Ultrapics.com, Ipics.com, Qwickpics.com as well as others.

14   4.29    In deposition in bankruptcy court, Brian Ellis was asked specifically if he sold his

15   software to Easynews, Ellis on the advice of counsel exercised his rights under the 5th

16   amendment.

17   4.30    In deposition Mike Minor testified that "someone" helped them to program the initial

18   www.easynews.com software.   However, he "forgot" the name of the person.  On best belief

19   this "forgotten" programmer was Brian Ellis.  On best belief the current software running

20   www.easynews.com is the software originally stolen from the Fort Worth police property room

21   and already found infringing in the Webbworld case.

22   4.31    James Gurkin, a primary Defendant in the Webbworld case stated he was relatively

23   certain that Brian Ellis had sold the Netpics software to Easynews.com.

4.32   El Dorado, Jeff Minor, Mike Minor and Shawn Freeman, do not own the rights to a single picture out of the millions displayed on www.easynews.com.

4.33   Defendants have never paid a cent in royalty fees, though making 14 million a year selling images, movies, and music of others copyrighted work.   The 14 million a year is in addition to the 26 million they made selling the software (owned individually) that infringes. Piracy is what made these earnings possible.

4.34   Unbeknown to Collins, in or about the month of October 2004, a third party stole and posted approximately 1075 of Collins' copyrighted and registered photos to an internet "newsgroup". See exhibit  1C.1-22

4.35   A "newsgroup" is an internet forum dedicated to the exchange of pictures, movies, music and discussions by people of similar interests.  A newsgroup typically specializes in certain subject areas, such as sports, for example, or Cajun cooking.   Some  newsgroups are devoted to sexually explicit material.   Newsgroups feature discrete collections of information called "postings" or "articles."   Newsgroup participants may "post" (upload) articles, which consist of text and/or images, movies and music.

4.36   A "news server" is a type of computer hard drive that stores the newsgroup's data and information and postings.

4.37   There are thousands of "news servers" scattered all over the world, which are independently owned and operated by third party owners, not by consumers.  These "news servers" are connected through a huge network of telephone lines or coaxial cable – similar to the world-wide-web.  This network of "news servers" is commonly referred to as the USENET.

4.38   The USENET is older than the internet and is the precursor of the internet.

4.39   The only way a consumer can upload a picture onto a third party's "news server," is if it has a contract with the owner of the news servers, usually through a monthly subscription.

7

1    4.40    However, the consumer also must have a type of software called a "news reader"

2    installed on his/her personal computer. The "news reader" software is necessary to allow the

3    consumer – first, to connect to the news server and – then, to upload and download images.

4    Once the "news reader" software is in place on the consumer's personal computer, the user can

5    scan a photo into his computer. The user then directs his "news reader" software to convert or

6    "encode" that digital image into an "ascii encoded" message for transmitting purposes. **It is**

7    **impossible to transmit an image to a third party "news server" without first encoding it**

8    **with "news reader" software.**

9    4.41    Once the image is encoded, transmitted and stored on a third party's news server, that

10   news server then shares that image with other independently owned news servers all over the

11   world.

12   4.42    On another part of the globe, a second consumer can connect to an independently

13   owned news server, with whom he/she has a monthly subscription, and download that same

14   image -  but only if he has a "news reader" on his own personal computer with which to

15   connect to the second set of news servers.

16   4.43    In order to actually see a viewable image that is pleasing to the eye, the second

17   consumer would have to ask the "news reader" software located on his/her own personal

18   computer to "decode" the image from "ascii encoded" message to an image that is pleasing to

19   the eye. Without the news reader software, all that the second end user could see is something

20   that looks like "alphabet soup" (a long string of alpha characters and symbols).

21   4.44    At all times relevant to this lawsuit, El Dorado owned a large volume of news servers in

22   Phoenix, Arizona, which every day received pirated photos, movies and music from other

23   independently owned and operated news servers all over the world.

4.45    At all times relevant to this suit, Jeff Minor had the ability to control the system, the copyright infringements, and profited directly from the copyright infringement.

4.46    At all times relevant to this suit Mike Minor programmed the software that "cherry picks" images from the Usenet to display on the website www.easynews.com.   Mike Minor maintained the system, upgraded the system and owned the software, known as "Filter Code", that ran the web site.  Mike Minor had the ability to control the system, the copyright infringements, and profited directly from the copyright infringement

4.47    Shawn Freeman, participated in the profits from the sale of El Dorado, Inc. assets. Shawn Freeman was the overall manager of El Dorado, Inc./EasyNews Inc.  He maintained and upgraded the "cherry picking" system, and  had the ability to control the system, the copyright infringements, and profited directly from the copyright infringement

A.      **EL DORADO OPERATED TWO SEPARATE AND DISTINCT SYSTEMS**

4.48    El Dorado's Easynews operation, operated and maintained by Jeff Minor, Mike Minor and Shawn Freeman,  consisted of two separate and distinct systems for storing and selling content that came streaming in from the USENET.   Defendants in the Austin case, and undoubtedly in this case will attempt to confuse the court repeatedly discussing the Usenet Pass-Through side of the business.   This case deals with the Easynews/El Dorado website http://www.easynews.com which is not even accessible via the Usenet.

4.49    One side of El Dorado's business was an NNTP system, which served customers who primarily wanted *only access* to the USENET (an older version of the internet), and did not need a "middle man" to decode the encoded pictures or convert them to viewable jpeg files because the end users had their own decoders on their personal computers which performed that function.  Collins will refer to this system as the "USENET Pass-Through" System.  On the USENET Pass-Through System, the end user could see everything that was transmitted over

9

the USENET without any active selection by the "middle man" and without filtration, modification, alteration or conversion by the middle man. Under the "USENET Pass-Through System", the data received from the USENET simply "passes through" the Easynews system to the end user. The USENET Pass-Through System is NOT at issue in this case.

4.50    The other distinct and independent system was the HTTP system (i.e. a website) which did not contain all of the data transmitted over the USENET. Instead, Easynews actively selected the content that would appear on its website. This selection process was designed to ensure that only "binary files" which consisted of pictures, movies and music (very few other file types were available on the website) ended up on the Easynews website and that "discussion-only" posts did not. For this reason, Collins will refer to this system as the "Cherry-Picking System."

4.51    It is important to note that the "Cherry-Picking System" drops or fails to display all text based messages posted to the targeted newsgroups. Further, it drops all text messages attached to the articles posted to the newsgroups.

4.52    Only Jeff Minor, Mike Minor and Shawn Freeman selected the newsgroups, in other words "Cherry Picked". They cherry picked the groups they thought would be most marketable and attract the most viewers. This selection of specific newsgroups could only be done by humans and not automatically.

4.53    Further "Cherry Picking" occurred when the Defendants set the filter code to do as its name implies – filter. Another word for filter is "pick". Defendants purposefully programmed the software to "cherry pick' binary post **only**: primarily jpegs, mp3s, or avi  files – which are pictures; music; or movies!

4.54    All text files in these newsgroups were dropped. The majority of post to any of these newsgroups are typically text.   So the majority of the post were deleted in favor of those

10

1  containing the marketable binary files.  No discussion post were allowed on

2  www.easynews.com, only pictures, music, movies, etc. – typically all copyrighted.

3  4.55    In the instance of Collins April 2006 postings,  www.easynews.com dropped all the

4  attached text message that clearly stated the newsgroup post was for personal use only, not to

5  be displayed on a commercial website, and that no implied license existed.  The text  part of

6  Collins' message constituted important "Copyright Management Information".

7  4.56    Jeff Minor, Mike Minor and Shawn Freeman personally selected each and every

8  newsgroup displayed on www.easynews.com.   They only selected those newsgroups that were

9  financially profitable to them from a marketing standpoint.   There were approximately 3,000

10 newsgroups displayed on www.easynews.com at the time relevant to this lawsuit.  Jeff Minor,

11 Mike Minor and Shawn Freeman selected almost every newsgroup with adult content, that was

12 displayed on the Usenet at that time, and very few other newsgroups.  Conversely, although the

13 Usenet offers tens of thousands of non adult newsgroups relatively very few of them were

14 offered via http://www.easynews.com.  Bear in mind the USENET Pass-Through System

15 displayed over 85,000 different newsgroups.   The USENET Pass-Through System displayed

16 newsgroups primarily related to the exchange of information, such as discussions, academic

17 papers and articles as well as the sharing of useful freeware programs.  The "Cherry-Picking

18 System" at issue in this case (www.easynews.com), for the most part displayed only hard core

19 pornography.  Other newsgroups contained copyrighted movies as well as copyrighted music.

20 4.57    The Usenet Pass-Through system only archived their post for 13 days.  The "Cherry

21 Picking System", however archived its files for over 40 days on its website making it viewable

22 to customers for the entire period.

23 4.58    Jeff Minor, Mike Minor and Shawn Freeman had the right, ability, and obligation NOT

24 to choose newsgroups with obviously infringing material.  There were numerous and

11

1  substantial red flags related to the copyright infringement in the titles of the newsgroups.

2  However, choosing these newsgroups made the system highly economically viable.

3  4.59    The software and assets of El Dorado were sold for approximately $26,000,000.

4  Each of the defendants received part of the proceeds from this sale.

5  4.60    The proceeds from the sale were not reported on the El Dorado or Easynews tax return.

6  4.61    The proceeds of the $26,000,000 sale were deposited directly into the accounts of Jeff

7  Minor and Mike Minor.

8  4.62    The Cherry Picking System and the USENET Pass-Through System each had their own

9  separate and distinct address on the internet – called an "IP" address (short for "internet

10  protocol"). An "IP" address acts just like a street address for a house. The IP address identifies

11  the physical location of a computer and also tells other computers where the subject computer

12  can be found for sending and receiving data.

13  4.63    Each of these two systems had its own distinct set of "storage drives" (also called "file

14  servers") which store two totally different types of data. The USENET Pass-Through System

15  relied on a set of storage drives that  contained ALL of the content received from the USENET

16  without filtration, modification or conversion, including purely discussion based text (i.e.

17  conversations between users) and binary files (i.e. pictures, movies and music.). Because the

18  USENET Pass-Through System operated as a mere "pass through," the binary files stored in

19  these storage drives were still in the original "encoded form" that they were in when the

20  original uploader posted them to the USENET. These encoded images were not viewable to

21  the end user, unless the end user decoded the images and converted them to jpeg files on his

22  own personal computer. Id.

23  4.64    The Cherry Picking System relied on a totally separate and independent set of storage

24  drives. These storage drives contained only the files selected by El Dorado's programmers, not

1   all of the files received from the USENET.  These drives contained only binary files (pictures,

2   music and movies).  Moreover, the images stored in these drives were already decoded and

3   converted into jpeg files by El Dorado's proprietary source code, which meant they were

4   already in a viewable form for the website customers  (e.g., this made it "easy" for the end

5   user).  Id.

6   4.65    When a website customer was on the Easynews website (i.e. the Cherry Picking

7   System) he/she was on a totally different address on the internet highway than when he/she was

8   on the USENET Pass-Through System, and was accessing a totally different set of computers.

9   When a user was on the Easynews website, he/she was looking only at the content that El

10  Dorado had chosen to make available to the website customers (i.e. only the images, movies

11  and music).  Content that had been substantially modified from the original Usenet post.

12  4.66    In contrast, when a user was on the USENET Pass-Through System, he/she could see

13  everything (without exception) that was transmitted over the USENET in the original form in

14  which it was transmitted (i.e. still encoded/not viewable), until they used their personal news

15  reader to decode it for viewing.

16  4.67    Mike Minor created the source code that sends the "binary only" files to the website via

17  the Cherry Picking System and ALL files received from the USENET (binaries and

18  discussions) to the USENET Pass-Through System, and Shawn Freeman created an

19  "algorithm" that enhanced it.

20  4.68    To provide usable content to the Cherry Picking System, Mike Minor also created

21  computer code that decoded the encoded pictures, converted them to jpeg files, which made

22  them viewable to anyone with a paid subscription to the website, indexed them, made them

23  searchable, and removed any text associated with them.  Shawn Freeman modified and

24  enhanced this computer to make it work better and faster.  This is why Jeff Minor proudly

13

1    exclaimed in deposition that Easynews made it "easy" for its customers to download the most

2    valuable content on the USENET.  El Dorado had already done all the "cherry-picking" for

3    them and already decoded and converted the encoded images into viewable files and made

4    them searchable.

5    4.69    Once the pirated image was loaded into the file servers, it became available for the El

6    Dorado subscribers to do word searches, view, print, download, duplicate and distribute to

7    others.

8    4.70    El Dorado stored the decoded/viewable images on the Cherry Picking System for

9    approximately forty days in order to give its customers time to shop for and download their

10    favorite images.

11    4.71    Mike Minor and Shawn Freeman also created a computer program to make "thumbnail"

12    size images so that its customers could easily see many images on the screen at the same time.

13    These thumbnail size images were a separate and distinct computer file from the full size

14    image.   These thumbnails purposely eliminated the Copyright Management Information placed

15    on the images by Collins.

16    4.72    Because of the creation of thumbnail images that resided on both systems in addition to

17    the full size images, at all times relevant to this lawsuit, there were at least four pirated copies

18    of Collins' copyrighted images stored and for sale within the El Dorado data center.  At all

19    times relevant to this lawsuit Jeff Minor, Mike Minor and Shawn Freeman had complete

20    control of the images and files displayed and available on www.easynews.com.

21    4.73    Mike Minor and Shawn Freeman also made it "easy" for its subscribers to download

22    images one at a time or multiple images at the same time through the Zip Manager tool.

23    4.74    Jeff Minor, Mike Minor and Shawn Freeman  through El Dorado could have easily

24    filtered out certain types of posts being streamed in from the USENET.  In fact, Jeff Minor,

14

Mike Minor and Shawn Freeman actually used a "kill filter" to filter out "sporge" coming in from the USENET.  Jeff Minor, Mike Minor and Shawn Freeman  through El Dorado could have blocked other types of content coming in from the USENET as well.

4.75    It is undisputed that at all times relevant to this lawsuit, Jeffrey Alan Minor was the owner of El Dorado and was the officer and director of El Dorado.   It is also undisputed that Mike Minor and Shawn Freeman were managers and principals of El Dorado and the entire "Cherry-Picking" system operation.

4.76    By creating and enhancing the above-described Cherry-Picking System, Jeff Minor, Mike Minor and Shawn Freeman exercised a great deal of control, if not total control, over the content of the El Dorado web site.  They had the ability to delete any infringing file, as well as the ability to choose any newsgroup for display, or discontinue displaying any newsgroup.

4.77    Jeff Minor, Mike Minor and Shawn Freeman  through El Dorado's website did not offer its subscribers direct access to the internet or to any other third party's news servers or web servers.  The subscription fee only entitled El Dorado's customers access to the news servers and web servers owned by El Dorado.  This was a closed, private network accessible only to El Dorado's subscribers.  If a picture did not exist on the El Dorado news servers or web servers, El Dorado's subscribers could not view it or download it (unless they had a separate subscription to a separately owned and operated news server or web server where the desired picture was stored).

4.78    El Dorado made approximately $1 million per month by selling pirated images, movies and music on its website.

4.79    At all times relevant to this lawsuit, Jeff Minor,  Mike Minor and Shawn Freeman each had the right and ability to limit or filter, and remove, the types of images, music and movies

that appeared for sale on its website.  Thus, Jeff Minor,  Mike Minor and Shawn Freeman had the right and ability to control and supervise the subscribers/infringers' activities.

4.80    Jeff Minor, Mike Minor and Shawn Freeman  through El Dorado also specifically prohibited its subscribers from, and even took specific measures to prevent them from posting "spam" (unwanted postings) on its own news servers.

4.81    El Dorado also prohibited its own subscribers from uploading *any new postings* to its own news servers until they had been subscribers for a certain period of time – and then they had to be granted permission.

4.82    El Dorado also had a process by which its subscribers could press a button and report "spam" or child pornography to the customer service department and ask that these postings be removed from the website.   Shawn Freeman oversaw the prompt removal of any offending material.

4.83    Ironically, El Dorado had an entire section of its website and news servers that appeared to be dedicated to child pornography.  Although El Dorado claims to have worked with the FBI to limit or stop child pornography at the source, the owner of the company, Jeff Minor, readily admitted under oath that neither he nor the company has ever done anything technologically to stop the flow of child pornography from other independently owned news servers to its own news servers or web servers.  Nor has Minor or his company ever done anything technologically to prevent its own subscribers from purchasing child pornography through the El Dorado website and news servers.  The same is also true of all the pirated images, movies and music that El Dorado sells.

4.84    At all times relevant to this lawsuit, Jeff Minor was an officer, director and owner of El Dorado, which owns 100% of the stock of both Easynews, Inc. and Puregig, Inc.

4.85    At all times relevant to this lawsuit, Jeff Minor, Mike Minor and Shawn Freeman had supervisory control and authority over the infringing activities of El Dorado and the El Dorado employees.

4.86    At all times relevant to this lawsuit, Mike Minor was the creator and owner of the computer code that ran the infringing operations of El Dorado.  Mike Minor licensed the code that he created to El Dorado.

4.87    At all times relevant to this lawsuit, Shawn Freeman worked closely with Mike Minor to create and enhance the computer code that ran the infringing operation of El Dorado, and had the ability to direct and control the infringing activities of the employees that worked under his authority.

4.88    At all times relevant to this lawsuit, Mike Minor was the supervisor of the programming staff that helped create the source code, maintained the code, modified the code, improved the code, maintained and operated the computer systems and ran the entire operation of the infringing activity.  Mike Minor supervised the day to day activities of the programming staff and system administrators, who worked directly in the department that created the coding and systems that caused massive copyright infringement to occur.

4.89    At all times relevant to this lawsuit, Jeff Minor, Mike Minor and Shawn Freeman received a direct and/or indirect financial benefit from the infringing activities.  All three of these individuals received salaries that came directly from the subscription fees, received profit distributions and bonuses that came directly from the consumer's monthly subscription fees, their personal cars were paid for directly from the subscription fees, their cell phones and monthly cell phone fees were paid for directly from the subscription fees.  Other perks such as seats at professional sporting events were paid from increased earnings related to increased infringements.  Moreover, the higher the volume of pirated images that El Dorado's customers

1  downloaded the more money went into the Minors and Shawn Freeman's pockets. The fees

2  were incremental based on the volume of pirated images, music and movies downloaded.

3  When the Minors sold the assets of El Dorado in November of 2006, the family was paid

4  approximately $27 million and Shawn Freeman was paid approximately $1,000,000.

5  4.90   El Dorado, particularly www.easynews.com never operated as an "internet service

6  provider" or "service provider" as defined in the definitions section of the Digital Millennium

7  Copyright Act. (DMCA)

8  4.91   At all times relevant to this lawsuit, El Dorado did not have a registered agent

9  designated to receive copyright infringement notices under the Digital Millennium Copyright

10  Act. (DMCA).  Therefore, El Dorado cannot take refuge in any of the "safe harbor" provisions

11  of the DMCA.

12  4.92   Only the shell company, Easynews, Inc. had a registered agent designated to receive

13  copyright infringement notices under the DMCA.  That agent was attorney Connie Mableson of

14  Phoenix, Arizona.  However, Easynews, Inc. has no assets, functioning bank accounts, income

15  or expenses or employees of its own.  Moreover, Easynews' registered DMCA agent did not

16  protect it in this instance because Collins sent the registered agent proper notice of the

17  copyright violations as required by the DMCA.

18  4.93   On or about November 2, 2004, Collins wrote a letter to attorney Connie Mableson, the

19  Easynews, Inc. designated agent for notice of copyright infringement, and notified her that

20  "Easynews" was violating her copyrights by displaying her photos on El Dorado's website

21  (although she did not know it was owned and operated by El Dorado at the time) and providing

22  the method and the means for others to view, copy, download, distribute and display those

23  photos.

18

4.94    On or about November 9, 2004, Mableson sent Collins an e-mail acknowledging receipt of Collins' letter, but claiming that her notice letter was defective because it did not "provide the specific location of each of the allegedly infringing photos." Mableson also asked Collins to provide the "abuse desk" with all of the headers that related to the infringing photos.

4.95    On the same day, Collins responded by e-mail to Mableson and explained that she had already provided her with all the information necessary to find and remove her pictures.

4.96    On or about November 11, 2004, an anonymous person at the "abuse desk" sent Collins an e-mail claiming that "the law dictates  that we are NOT to generally police the USENET and its millions of postings to see if there are any of your allegedly infringing files in the thousands of newsgroups." The anonymous e-mail also asked for a list of the headers for the postings. However, the link to the header function was broken and the header information was, thus, not available. It was the responsibility of El Dorado to ensure that the links to the header information were functioning properly if it wanted aggrieved photographers to comply with its complaint policy.

4.97    Technology exists that can digitally optically scan the images to "see" the word "copyright" or the copyright symbol " © ". Easynews.com could have easily run the digital images through such software and removed all images with copyright symbols or the word copyright.

4.98    Moreover, there is no legal requirement that an aggrieved photographer provide the header information. Nor is the header information the best way to identify the location of the infringing photos for the website side of the operation. Each image had a distinctive file name unique to Collins that was easily searchable in El Dorado's database. Collins performed such a search shortly after the infringement. It is elementary that if a website user can do a search the system programmers can do the same search. Several of El Dorado's programmers testified

1  that they could easily find an image even if all they had was the name of the newsgroup and the

2  subject line and/or the "file name."   Arguing that they needed a long 150 character plus string

3  of alpha, numeric symbols contained in the header to find an infringement is disingenuous.

4  The chances that some staff person at EasyNews could successfully type such a long string into

5  their system to delete the infringement is virtually nil on a practical basis.  It poses such a

6  burden on the infringed party to provide this long string of characters that they would give up.

7  4.99     Exactly the intent of the Defendants.  Even when the long list characters were provided

8  (the header) they still would not remove the infringing material.

9  4.100   Thus, the requirement to furnish headers was an obstacle deliberately set up by the

10  Defendants to make it more difficult for aggrieved photographers to file a complaint –

11  especially when the link to the header information was broken.

12  4.101   On the same day, Collins responded by e-mail to the "abuse desk" informing them

13  specifically where they could find her photos on El Dorado's website.

14  4.102   On or about November 12, 2004, Mableson sent Collins another e-mail informing her

15  that "Easynews" would review the allegedly infringing images – but only those for which they

16  had sufficient header information.

17  4.103   On the same day, Collins responded by e-mail to Mableson, once again informing her of

18  where the photos could be found.

19  4.104   On or about December 4, 2004, Collins sent another e-mail to Mableson informing her

20  that the photos still had not been removed and urging her to have them removed.

21  4.105   On or about December 6, 2004, Mabelson responded to Collins by e-mail asking for the

22  header information for each picture.

4.106  El Dorado never removed the infringing pictures in response to Collins' complaints. Instead, after approximately forty days, the El Dorado system automatically eliminated the offending images in the normal course of its operations.

4.107  In the month of February 2005, a third party again stole and posted a group of Collins' copyrighted and registered photographs onto a newsgroup on the USENET.  Again, those same images appeared for sale on El Dorado's website and on the news servers.

4.108  On or about March 15, 2005, Collins sent another letter (including headers), priority mail, with a proof of mailing,  to Mableson asking that her photos be removed from  El Dorado's website, and informing her of where the photos could be found. A second letter was sent on or about March 24th, 2005 certified mail, the mailing was videoed.   This time Collins' letters enclosed copies of the headers showing where the photos could be found.  Despite having received the headers, El Dorado did not respond to Collins' letter and did not remove the infringing photos.  Instead, after approximately forty-five days, the El Dorado system automatically eliminated the offending images in the normal course of its operations.

4.109  On or about April 14, 2006 Leann Collins posted approximately 109 images to the Usenet newsgroup alt.binaries.pictures.fine-art.photos.

4.110  These images posted to the newsgroup included as text language to the effect that no rights in the images were released; there was no implied license granted; that the pictures were for personal use only; and that they were copyrighted, and that they were not to be posted on any commercial website.

4.111  Within several hours these pictures were picked up and displayed on El Dorado's web servers and news servers - despite Collins having clearly stated that they were not to appear on a commercial site and that the images were copyrighted.

4.112    The "Filter Code" deleted all copyright management information, particularly the restrictions on use, from the newsgroup post, then displayed her work on its website for approximately 45 days refusing to take it down.

4.113    Collins sent a Digital Millennium Copyright Act notice with headers dated April 25, 2006 mailed April 26, 2006 to Connie Mabelson.

4.114    El Dorado and Defendants failed to comply with the law.  A list of the photographs at issue in this violation, and the dates of registration is attached as Exhibit 1 and incorporated herein by reference.

4.115    By charging a monthly subscription fee, El Dorado, Jeff and Mike Minor and Shawn Freeman received a direct and/or indirect economic benefit from the infringing activities of its users.  The millions of stolen copyrighted images on the El Dorado website enhances the value of El Dorado's services to its subscribers and also attracts new subscribers.

4.116    El Dorado also had the right and ability to supervise and control the infringers' activities.  Jeff and Mike Minor and Shawn Freeman had the right and ability to supervise and control the infringing activities of El Dorado and Easynews, Inc.

4.117    Thus, El Dorado does much more than simply operate a passive website.

4.118    Jeff and Mike Minor and Shawn Freeman had actual and constructive knowledge that the infringing copies were owned and copyrighted by Collins because each was prominently marked with Collins' name, the word "copyright" and the year of copyright registration.

4.119    El Dorado's and Jeff Minor's former Phoenix based attorney was fired/and or withdrew from the case presumably because she had failed to advise Jeff Minor to take down my images,  allegedly failed to provide him Plaintiff's letter and headers when mailed in March of 2005 and April of 2006, (or Minor failed to act on them possibly on her advice),  and/or advised him he had DMCA immunity when in fact he did not.

22

4.120    Defendant's programmed the software to make automatic thumbnails of movies.

4.121    The movies were available for download even though the thumbnails displayed Digital Rights Management (DRM) information in the form of Skulls & Crossbones (presumably meaning "Danger!", "Toxic", or "Beware"), See exhibit 3.

4.122    Such warnings give actual, constructive and administrative notice of infringing material.

4.123    Defendants could have easily programmed the system to look for copyright notices, DRM, and copyright management information.  Jeff Minor, Mike Minor and Shawn Freeman personally and purposely chose not to add a feature to the software to remove copyrighted material even when they unquestionably knew about it.

4.124    If the filter code can display a skull and crossbones "DANGER!" warning on copyright files that have Digital Rights Management information it can just as easily delete and not offer for download movies it has identified as infringing.

4.125    Jeff Minor, Mike Minor and Shawn Freeman offered these movies with Digital Rights Management information for download regardless of the warning displayed on their own site.

4.126    In addition to the 26 million that Jeff Minor, Mike Minor and Shawn Freeman received for the sale of the www.easynews.com website,  Jeff Minor has re-directed profits from the www.easynews.com website through a deferred compensation plan and/or profit sharing plan for ownership in a limited partnership to open, and operate a topless bar in Scottsdale Arizona.  On best belief many profits have been siphoned out of www.easynews.com over the years which makes the true earnings of the company much higher.  On best belief this re-direction of profits was done for illegal tax reasons and/or in violation of applicable ERISA statutes.

## V.  CAUSES OF ACTION

## A.  DIRECT INFRINGEMENT

5.1      Plaintiff incorporates all preceding and proceeding paragraphs herein by reference.

5.2.     The list of infringed works that are the subject of this copyright claim are attached, see exhibit 1.

5.3.     Collins owns the copyrights in those works.

5.4      Those copyrights have been registered in accordance with the U.S. Copyright Act;

5.5      By the conduct described in this pleading, El Dorado Sales, Inc. and Easynews, Inc. directly infringed on Collins right to: (a) display; (b) distribute; and (c) reproduce the copyrighted works.  Two separate and distinct sets of direct infringement occurred.

## B. CONTRIBUTORY INFRINGEMENT

5.6      Plaintiff incorporates all preceding and proceeding paragraphs herein by reference.  The conduct of Jeffrey Alan Minor, and Mike Minor ("The Minors") and Shawn Freeman also constitutes four separate and distinct sets of contributory infringement – four on the "Cherry Picking System".

5.7      The Minors and Freeman substantially participated in the direct infringement by El Dorado, Inc., Easynews, Inc. and by third parties by providing the machinery and the means to infringe on both the news servers and the web servers.

5.8      The Minors and Freeman induced and encouraged infringement by the subscribers of El Dorado, and by El Dorado Sales, Inc. and Easynews, Inc.

5.9      The Minors and Freeman had actual and constructive knowledge of the direct infringing activities by El Dorado Sales, Inc., Easynews, Inc. and the subscribers because the images were prominently marked with Collins' name, the word "copyright," the year of copyright

1    registration and because Collins put it on notice by sending written correspondence and e-mail

2    correspondence.

3    5.10    The Minors and Freeman knew or should have known that El Dorado, Inc. and

4    Easynews, Inc. were selling pirated copies of Collins' copyrighted images and that the

5    subscribers were viewing, printing, downloading and distributing Collins' copyrighted images

6    without Collins' consent.

7    5.11    Jeff Minor, Mike Minor and Shawn Freeman personally determined the pricing

8    mechanism to encourage increased downloads of infringing material.  They also personally

9    provided the tools in the form of "zip" downloading features to make it easy to download

10   massive amounts of material at one time.  Thus subscribers could download literally **GIGS** of

11   infringing material.  This feature was personally programmed by Mike Minor and maintained

12   by Shawn Freeman.

13   5.12    The downloading of these additional gigs provided more profits for distribution by the

14   Minors and Freeman.

15   5.13    The Minors and Freeman personally chose each and every newsgroup displayed on

16   www.easynews.com.  They purposefully chose newsgroups that had a high likelihood, in fact a

17   certainty, to contain copyrighted material.

18   5.14    Jeff Minor, Mike Minor and Shawn Freeman personally made the decision of how to

19   apply their copyright policy.  They unreasonably chose a method that obstructed a

20   photographer from having their images removed from the Easynews.com system.  Ironically,

21   spam could be removed far easier than copyrighted images.

22   5.15    Jeff Minor, Mike Minor and Shawn Freeman each individually and personally knew

23   about the infringements of Collins images.  They each made a personal decision not to remove

24   those images precipitating this law suit.  Jeff Minor inexplicably even called Collins regarding